IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARK KENDALL MCFADDEN. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ARCH INSURANCE COMPANY, | ) | Case No. 12-CV-208-JHP |
| A Missouri Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Before the Court is Defendant Arch Insurance Company's ("Arch") Motion for Summary Judgment [Doc. No. 20], and Plaintiff's Response to Defendant's Motion for Summary Judgment [Doc. No. 26]. After consideration of the briefs, and for the reasons stated below, Arch's Motion for Summary Judgment is **DENIED**.

**BACKGROUND[1]**

On January 15, 2010, Plaintiff was injured in a motor vehicle accident after the Muskogee County EMS ("MCEMS") ambulance in which he was travelling was struck by a vehicle driven by Kimberly Hackman ("Hackman"). Hackman, who was determined to be at-fault for the accident, was insured by a policy with State Farm Mutual Automobile Insurance ("State Farm") with liability limits of $25,000 per person and $50,000 per accident. Arch provided insurance to MCEMS, including UM/UIM coverage (the "MCEMS Policy"). Arch's Oklahoma Uninsured Motorist Coverage endorsement provided, in relevant part, the following:

---

[1] The following facts are either not specifically controverted by Plaintiff in accordance with Local Civil Rule 56.1(c), not subject to a genuine dispute, or are described in the light most favorable to Plaintiff. Immaterial facts are omitted.

1

>A person seeking uninsured motorists coverage must also notify us, in writing, of a tentative settlement between the 'insured' and the insurer of an 'uninsured motor vehicle', and allow us 60 days to advance payment in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such 'uninsured motor vehicle'.

[Doc. No. 20, Ex. 2 at 3].

Following the accident, Arch engaged Gallagher-Bassett ("Gallagher"), a third-party administrator, to investigate the accident to determine if a potential UM/UIM claim existed. On June 22, 2011, Gallagher sent a letter to Plaintiff's counsel explaining:

>This letter is to advise you that Gallagher Bassett Services, Inc. is the third party administrator handling this claim on behalf of [MCEMS]. We are in receipt of your letter of representation of [Mark McFadden] for a claim against our client. …
>
>Since this is our first notice of the above claim, we are in the process of investigating the facts surrounding this accident.

[Doc. No. 26, Ex. 1 at 2].

On July 19, 2011, Plaintiff's counsel responded to the June 22, 2011 letter, explaining that Plaintiff's only claim against MCEMS was a workers compensation claim, and requesting more information as to the purpose of the June 22, 2011 letter. On November 22, 2011, without notifying Arch, Plaintiff signed a general release of his claims against Hackman and settled his UM/UIM claim with State Farm for $25000. On March 8, 2012, having received no response to the July 19, 2011 letter, Plaintiff's counsel sent Gallagher another letter inquiring as to whether Gallagher represented MCEMS on UM claims and requesting a copy of any UM policy in effect at the time of Plaintiff's injuries. Gallagher responded on April 19, 2012, with a letter requesting information regarding Plaintiff's claim and injuries; however, this letter did not reference MCEMS's UM policy.

## DISCUSSION

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In making the summary judgment determination, the Court examines the factual record and draws reasonable inferences therefrom in the light most favorable to the non-moving party. *Simms v. Oklahoma*, 165 F.3d 1321, 1326 (10th Cir. 1999). The presence of a genuine issue of material fact defeats the motion. An issue is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if proof thereof might affect the outcome of the lawsuit as assessed from the controlling substantive law. *Id.* at 249. Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52.

### A.  The *Porter* doctrine

Arch contends that it cannot be held liable for breach of contract or bad faith, arguing that the *Porter* doctrine is a complete defense to Plaintiff's claims. Specifically, Arch argues that Plaintiff's UM/UIM claim with Arch was extinguished when Plaintiff signed a general release of his claims against Hackman and settled his UM/UIM claim against Hackman's insurer, State Farm, without giving Arch the notice required pursuant to the terms the MCEMS Policy. Arch asserts that if Plaintiff's UM/UIM claim is barred, then there can be no viable breach of contract or bad faith claims arising from Arch's handling of the extinguished claim.

Okla. Stat. tit. 36, § 3636(F) provides insurance carriers with a right to be subrogated, stating:

> F. In the event of payment [by UM carrier] to any person under the coverage required by this section [insured] and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person [insured] against any person or organization legally responsible for the bodily injury [tort-feasor] for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer.... Provided further, that any payment made by the insured tort-feasor shall not reduce or be a credit against the total liability limits as provided in the insured's own uninsured motorist coverage.

Okla. Stat. tit. 36, § 3636(F) (" § 3636(F)"). The UM carrier's statutory "right to be subrogated is derived from, and limited to, the tort claim of the insured." *Frey v. Independence Fire and Cas. Co.,* 698 P.2d 17, 21 (Okla. 1985); *Hartford Ins. Co. of Midwest v. Dyer,* 61 P.3d 912, 915 (Okla. Civ. App. 2002) ("[UM carrier]—as the subrogated UM insurer—could only assert whatever rights [its inured] had against the tort-feasor ...").

Therefore, "[i]f the insured releases the wrongdoer from liability, the insurer's subrogation rights may be viewed ... as having been destroyed .... because the insured no longer has a tort claim against the wrongdoer to which subrogation may be effected." Johnny Parker, *Uninsured Motorist Law in Oklahoma,* 34 Okla. City U.L.Rev. 364, 408 (2009); *see Porter v. MFA Mut. Ins. Co.,* 643 P.2d 302, 305 (Okla.1982) ("[I]f an insured settles with and releases a wrongdoer from liability for a loss before payment of the loss has been made by the insurer, the insurer's right of subrogation against the wrongdoer is thereby destroyed.").

In addition to extinguishing a UM carrier's subrogation rights, such a release also provides the UM carrier with a defense to an action to recover UM proceeds. *See Porter,* 643 P.2d at 305. In *Porter v. MFA Mutual Insurance Company*, the Oklahoma Supreme Court held that an insured was precluded from bringing an action on an UIM policy because the insured

"voluntarily and knowingly ma[de] a settlement with and g[ave] a general release to [the tort-feasor], barr[ing] [the UIM carrier] from exercising its lawful right of recourse against the responsible party," in violation of the terms of the UIM policy. *Id.* Following the *Porter* decision, the Oklahoma Legislature, seeking to balance the rights of the UM carrier and the insured, "created a mechanism by which an insured could receive the equivalent of a settlement offer from the tort-feasor, while at the same time protecting the [UM] carrier's subrogation rights against the wrongdoer." *Brambl v. GEICO Gen. Ins. Co.*, 2011 WL 5326076 (N.D. Okla. Nov. 4, 2011) (citation omitted).

Specifically, Oklahoma's UM subrogation statute requires an insured to notify her UM carrier of any "tentative agreement to settle for liability limits with an insured tortfeasor," and submit written documentation to her UM carrier of any pecuniary losses incurred, including copies of all medical bills. *See* Okla. Stat. tit. 36, § 3636(F)(1), (2). A UM carrier may then opt to "substitute its payment to the insured for the tentative settlement amount." *Id.* § 3636(F)(2). If the UM carrier substitutes its own payment for the liability insurer's settlement offer, the UM carrier is "entitled to the insured's right of recovery to the extent of such [liability settlement] payment and any settlement under the [UM] coverage." *Id.* If it does not elect to substitute, the UM carrier "has no right to the proceeds of any settlement or judgment ... for any amount paid under the uninsured motorist coverage." *Id.*

However, even if a Plaintiff does not provide the statutorily-required notice to the UM carrier, the *Porter* defense does not serve as an absolute bar to an insured UM claim. In order for the defense to apply, the insured must, at the time of executing the release to the tortfeasor, be *voluntarily and knowingly* interfering with its UM carrier's subrogation rights. *See Phillips v. N.H. Ins. Co.*, 263 F.3d 1215, 1222 (10th Cir. 2001). To be sure, a UM "carrier's legal ability to

5

exercise subrogation rights is not an indispensable condition of its obligation to pay an otherwise valid [UM] claim." *Strong v. Hanover Ins. Co.*, 106 P.3d 604, 610 (Okla. Civ. App. 2004) (citing *Phillips*, 263 F.3d at 1222); *see also Torres v. Kan. City Fire & Marine Ins. Co.*, 849 P.2d 407, 413 (Okla. 1993); *Robertson v. U.S. Fid. & Guar. Co.*, 836 P.2d 1294, 1297 (Okla. 1992); *Barfield v. Barfield*, 742 P.2d 1107, 1112 (Okla. 1987); *Uptegraft v. Home Ins. Co.*, 662 P.2d 681, 686-87 (Okla. 1983).

These limitations to the *Porter* defense are consistent with the Oklahoma Supreme Court's avowed "tendency to protect the insured's rights to collect from the UM carrier." *Burch v. Allstate Ins. Co.*, 977 P.2d 1057, 1061 n.14 (Okla. 1998). The Oklahoma Supreme Court has also noted that "the initial responsibility to act to protect subrogated rights rests upon the insurer," and that "[a]n insurer must aid its insured in the preservation of its subrogation rights." *Sexton v. Continental Cas. Co.*, 816 P.2d 1135, 1138 (Okla. 1991). Certainly, an insurer may waive its right to subrogation or be estopped to assert it due to its conduct. *See Buzzard v. Farmers Ins. Co.,* 824 P.2d 1105, 1113–14 (Okla. 1991).

The Court finds that Plaintiff's UM claim is not barred by the *Porter* defense because Plaintiff did not voluntarily and knowingly interfere with Arch's right to subrogation. In order to prevail on its motion for summary judgment, Arch must establish that Plaintiff was aware of the existence of the MCEMS Policy at the time he released his claims against Hacker. While Gallagher contacted Plaintiff after he was injured, its correspondence never unambiguously informed Plaintiff of the MCEMS policy. Instead, the letters sent by Gallagher specifically state that Gallagher is seeking information regarding a pending claim against MCEMS; specifically, the pending claim for which Plaintiff's counsel was providing representation at the time the letters were received. At the time the letters were received, Plaintiff's only claim against

MCEMS was a workers compensation claim. In addition, Arch has presented no evidence to suggest that Plaintiff was aware of the MCEMS policy at the time he released his claims against Hackman. In fact, the undisputed facts establish that Plaintiff was confused by the ambiguous nature of Gallagher's correspondence. Indeed, in his July 19, 2011 letter to Gallagher, Plaintiff's counsel inquired as to the purpose of Gallagher's June 22, 2011 letter. Under these circumstances, the Court finds it impossible for Plaintiff to have voluntarily and knowingly interfered with Arch's right to subrogation. Accordingly, the *Porter* defense may not be asserted by Arch, and Arch's motion for summary judgment is denied.

## CONCLUSION

After consideration of the briefs, and for the detailed above, Arch's Motion for Summary Judgment is **DENIED**.

IT IS SO ORDERED this 8th day of January, 2013.

James H. Payne
United States District Judge
Eastern District of Oklahoma